**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **LaRhonda Burton, et al.,** | ) | **CASE NO. 1:17 CV 134** |
| | ) | |
| **Plaintiffs,** | ) | **JUDGE PATRICIA A. GAUGHAN** |
| | ) | |
| vs. | ) | |
| | ) | |
| **Cleveland Heights-University Heights City School District Board of Education** | ) ) ) | **Memorandum of Opinion and Order** |
| | ) | |
| **Defendant.** | ) | |

**INTRODUCTION**

This matter is before the Court upon Defendant's Motion for Judgment on the Pleadings (Doc. 18). Plaintiff Amiya Burton is a former student in the Cleveland Heights-University Heights City School District (the "District"). This lawsuit arises out of two special education due process complaints that Amiya and her mother, LaRhonda Burton, filed against the Defendant Cleveland Heights-University Heights Board of Education in 2015. In their First Amended Complaint, Plaintiffs appeal the state level review officer's decision on their due process complaints. They allege that Defendant violated Amiya's rights under the Individuals with

1

Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 *et seq.*; Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794; and the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.* Defendant now moves for judgment on the pleadings on four of Plaintiffs' claims to the extent they relate to the ADA and Section 504. For the reasons that follow, the motion is GRANTED IN PART AND DENIED IN PART.

## **FACTS**

Amiya began attending school in the District on September 2, 2014, when she was 16. Amiya was scheduled to graduate at the end of the 2014-2015 school year. To keep her on track for graduation, the District determined that she would need to take day and night classes. (First Am. Compl. ¶ 24). During second semester, Amiya was taking seven day classes and five night classes. Plaintiffs allege that Amiya's grades were "initially decent" but then drastically declined. Because of Amiya's falling grades, missed assignments, and absences from school, Mrs. Burton suspected that she was suffering the effects of her depressive disorder. Amiya had been diagnosed with depression in 2013.[1]

On December 17, 2014, Mrs. Burton informed two of Amiya's teachers via email that she was concerned about Amiya's academic performance and emotional well-being. (*Id.* at ¶ 38). The District's Student Assessment Team held a meeting on February 18, 2015, "to discuss Mrs. Burton's concerns over Amiya's academic performance." (*Id.* ¶ 42). Plaintiffs believed that this meeting was supposed to be about "whether to evaluate Amiya for an IEP [individualized education program] or if there was a suspicion of a disability." (*Id.* at ¶ 43). But the teachers at the meeting had not been informed of Mrs. Burton's request to have Amiya evaluated for a

---

[1] She was again diagnosed with depression around March of 2015.

disability, and "no discussion of an evaluation for disability was broached." (*Id.* at ¶ 48). Mrs. Burton alerted the team of the reasons she was concerned regarding Amiya's depression. Plaintiffs allege that "[d]espite the information [that they] provided, Defendant[] through gross misjudgment, attributed Amiya's academic and behavioral struggles only to [her] attendance." (*Id.*, at ¶ 63).

Plaintiffs claim that after the meeting, a District psychologist completed in bad faith a Prior Written Notice that erroneously stated that the team had considered whether Amiya had a disability, but the team did not suspect that she did. (*Id.* ¶¶ 67-68). The notice also indicated that Plaintiffs had informed the District of Amiya's 2013 depression diagnosis. Plaintiffs allege that the team created an intervention plan, but the plan was not provided to everyone or reduced to writing. (*Id.* at ¶ 69). The District did not evaluate Amiya for an IEP during the 2014-15 school year and did not put in place any accommodations, transitional services, or special education services for her during the school year. (*Id.* ¶¶ 73-76).

On February 23, 2015, Plaintiffs filed a due process complaint against the District, alleging that it denied Amiya a free and appropriate public education ("FAPE") under the IDEA, violated the Child Find requirement of the IDEA, refused to evaluate Amiya, denied access to her educational records, and did not provide appropriate accommodations, protections, or related services. (*Id.* ¶ 77). Plaintiffs amended their due process complaint on March 16, 2015, to add a claim that the District did not provide a detailed explanation as to why it did not timely test Amiya for disabilities or convene a team meeting to decide if it would test her for disabilities. The District denied Plaintiffs' allegations in the complaint and amended complaint, including the need for Amiya to be evaluated.

3

On March 24, 2015, the District's Director of Student Services, Dr. Johnston, led a meeting to determine if Amiya had a suspected disability. (*Id.* ¶ 83). On April 2, 2015, the District sent a Prior Written Notice to Plaintiffs stating that the team would not initiate an evaluation of Amiya. (*Id.* ¶ 91). On April 21, 2015, however, Defendant completed a Section 504 Referral Form, which stated that "Amiya has been diagnosed with Depressive Disorder....Her behaviors and emotional issues adversely affect her education." (*Id.* ¶ 92).

Plaintiffs allege that the District did not complete the Section 504 evaluation and did not provide Amiya with a Section 504 plan. Instead, it moved to dismiss Plaintiffs' due process complaint as moot because Amiya had earned enough credits to graduate. Amiya graduated on June 1, 2015. (*Id.* ¶ 97). Several days later, Plaintiffs filed another due process complaint, alleging that the District unlawfully retaliated against her by graduating her without providing her FAPE. Plaintiffs claim that the District responded to the new complaint by threatening Plaintiffs and their counsel that it "may consider seeking fees pursuant to 20 U.S.C. 141S(i)(3)([B])(ii) and (iii) should Parent continue pursuing the meritless claims." (*Id.* ¶ 104).

The independent hearing officer ("IHO") denied the District's motion to dismiss on June 5, 2015. The District appealed that decision to the state level review officer, who dismissed the appeal and remanded the case to the IHO on July 27, 2015. A due process hearing began on September 17, 2015. The IHO issued his final decision on May 24, 2016.[2] He concluded that

---

[2] In ruling on a motion for judgment on the pleadings, a court may take notice of public records and government agencies' decisions as well as documents referred to in the plaintiff's complaint and that are central to the plaintiff's claim. *Jones v. Lakeview School Dist.*, 2007 WL 2084341, at * 2 (N.D. Ohio July 19, 2007) (considering three SLRO decisions in ruling on a motion for judgment on the pleadings). Here, the IHO's decision is a public record and Plaintiffs specifically referred to it in their First Amended Complaint. (First

Plaintiffs had failed to prove by a preponderance of the evidence that the District retaliated against them by sending a notice of intent to consider seeking fees or by graduating Amiya even though she was not qualified to graduate. With respect to Amiya's graduation, the IHO held that Plaintiffs did not prove that Amiya graduated without meeting the requirements for passing her courses. Rather, the evidence showed that Amiya had earned and received all of the credits required for graduation. (IHO Decision, Doc. 18-1, at 104-05). The IHO concluded that the District had failed to provide timely notice of its refusal to evaluate Amiya but that Plaintiffs did not establish that this failure resulted in any substantive harm. He also concluded that the District failed to identify Amiya as a child suspected of having a disability and that this failure violated the Child Find requirements of the IDEA, thereby denying her FAPE. Plaintiffs, however, did not prove by a preponderance of the evidence that Amiya needed special education or related services. Finally, the IHO determined that the District failed to provide some documents to Plaintiffs in a timely manner but that this failure did not result in any substantive harm. On October 21, 2016, the state level review officer affirmed the IHO's decision on all counts.

Plaintiffs then filed the current lawsuit, bringing seven claims. Count I is a claim for denial of FAPE under the IDEA; Count II is a claim for procedural violations and substantive harm under the IDEA; Count III is a claim for violation of the Child Find requirement in Section 504 of the Rehabilitation Act; Count IV is a claim for denial of FAPE under Section 504; Count V is a discrimination claim under the ADA and Section 504; Count VI is a retaliation claim under the IDEA, ADA, and Section 504; and Count VII is a claim for attorneys' fees under the IDEA. Defendant moves to dismiss Counts III-VI to the extent that they relate to the ADA and

---

Am. Compl., ¶¶ 125-26, 129-30, 132, and 139).

Section 504. Plaintiffs oppose the motion.

**STANDARD OF REVIEW**

A "motion for judgment on the pleadings under Rule 12(c) is generally reviewed under the same standard as a Rule 12(b)(6) motion." *Mellentine v. Ameriquest Mortg. Co.,* 2013 WL 560515 (6th Cir. Feb. 14, 2013) (citing *EEOC v. J.H. Routh Packing Co.*, 246 F.3d 850, 851 (6th Cir.2001)). "For purposes of a motion for judgment on the pleadings, all well-pleaded allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless entitled to judgment." *JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 581 (6th Cir.2007).

Thus, "[w]e assume the factual allegations in the complaint are true and construe the complaint in the light most favorable to the plaintiff." *Comtide Holdings, LLC v. Booth Creek Management Corp.,* 2009 WL 1884445 (6th Cir. July 2, 2009) (citing *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir.2008)). In construing the complaint in the light most favorable to the non-moving party, "the court does not accept the bare assertion of legal conclusions as enough, nor does it accept as true unwarranted factual inferences." *Gritton v. Disponett,* 2009 WL 1505256 (6th Cir. May 27, 2009) (citing *In re Sofamor Danek Group, Inc.*, 123 F.3d 394, 400 (6th Cir.1997). As outlined by the Sixth Circuit:

> Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." "Specific facts are not necessary; the statement need only give the defendant fair notice of what the ... claim is and the grounds upon which it rests."*Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). However, "[f]actual allegations must be enough to raise a right to relief above the speculative level" and to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 555, 570. A plaintiff must "plead[ ] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

6

*Keys v. Humana, Inc.*, 684 F.3d 605, 608 (6th Cir.2012). Thus, *Twombly* and *Iqbal* require that the complaint contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face based on factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Twombly*, 550 U.S. at 570; *Iqbal,* 556 U.S. at 678. The complaint must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly,* 550 U.S. at 555.

## LAW AND ANALYSIS

### A. Parental standing under Section 504 and the ADA

Defendant first argues that Mrs. Burton lacks standing to prosecute ADA and Section 504 claims on Amiya's behalf. In support, they cite *Leonard v. Cleveland Metropolitan School Dist.*, where a judge of this district noted that a parent "may lack standing to bring claims under the ADA and the Rehabilitation Act for any alleged discrimination against his [child]." 2011 WL 5869606, at * 3 (Nov. 16, 2011) (Gwin, J.) (raising the issue of standing sua sponte). He recognized that "[t]he Sixth Circuit has not joined other courts that have extended parents' rights to pursue claims under the ADA and the Rehabilitation Act on behalf of their child" but stated that "[p]ersuasive authority suggests that parents lack" such standing. *Id.* (citations omitted). At least one other district court in the Sixth Circuit has expressly held that parents do not have standing to prosecute claims under the ADA and the Rehabilitation Act on their own behalf. *Link v. Metropolitan Government of Nashville and Davidson County*, 2012 WL 4506028, at *5 (M.D. Tenn. Sept. 28, 2012). In *Link*, the court noted that federal courts have disagreed over whether the Supreme Court's decision in *Winkelman v. Parma City School District*, 550 U.S. 516 (2007),

7

which held that parents possess standing to prosecute IDEA claims on their own behalf, extends to claims brought by parents under the Rehabilitation Act and the ADA. The court declined to extend *Winkelman* to such claims, explaining that the Supreme Court's decision was "rooted in the text and statutory structure of the IDEA." *Id.* (citing cases that have declined to extend *Winkelman* to the Rehabilitation Act and ADA). In responding to Defendant's standing argument, Plaintiffs confuse the issue of standing with the statute of limitations. They argue that Plaintiffs both have standing because they filed their claims within the applicable statute of limitations.[3]

      The Court agrees that Mrs. Burton does not have standing to assert personal claims under the ADA and the Rehabilitation Act based on violations of Amiya's rights. Counts III, IV, and V allege only violations of Amiya's rights–*i.e.*, Defendant violated the Child Find provision of the Rehabilitation Act by failing to identify Amiya as a child with a disability; Defendant deprived Amiya of FAPE by failing to evaluate her for a 504 plan; and Defendant discriminated against Amiya on the basis of her disability. Although Mrs. Burton alleges that she suffered consequential damages, including pain, suffering, and emotional distress as a result of Defendant's actions, (First Am. Compl. ¶ 181), even liberally construed, these counts do not allege that Mrs. Burton herself was discriminated against or denied benefits or services based on

---

[3] In fact, Plaintiffs state that they "do not have an issue with Amiya going forward solely with Counts III, IV and V, as long as exhaustion or lack of standing prior to her reaching the age of majority are not raised as defenses by the Defendant." (Doc. 22, at 8-9). The District, however, has not waived any exhaustion requirements with respect to Plaintiffs' Section 504 and ADA claims. (*See* Doc. 23, at 9, n.5).

Amiya's disabilities.[4] *See R.S. v. Butler Cty., Pennsylvania*, No. 16-3194, 2017 WL 2787615, at *3 (3d Cir. June 27, 2017) (affirming dismissal of parents' Rehabilitation Act and ADA claims based on their son's disability because the complaint contained no factual allegations from which it could be inferred that the parents were personally subjected to discrimination because of their son's disability) (citing *McCullum v. Orlando Reg'l Healthcare Sys., Inc.*, 768 F.3d 1135, 1142 (11th Cir. 2014) (holding that a nondisabled person "has standing to bring suit under the ADA only if she was personally discriminated against or denied some benefit because of her association with a disabled person")).

Similarly, to the extent that Mrs. Burton's retaliation claim in Count VI is based on the District graduating Amiya even though it did not provide her an appropriate education, she does not have standing to pursue such a claim because it is based on an alleged violation of Amiya's rights. On the other hand, Mrs. Burton would have standing to assert a retaliation claim insofar as it is based on the allegation that Defendant threatened to seek fees if "Parent [*i.e.,* Mrs. Burton] and her counsel" continued to pursue the due process claim before the IHO. This claim relates to an alleged threat of retaliation against Mrs. Burton directly as a result of her actions in pursuing claims on behalf of Amiyah.

Thus, Counts III, IV, and V are dismissed with respect to Mrs. Burton. Count VI is dismissed with respect to Mrs. Burton only insofar as it is based on the District graduating Amiya without having provided her FAPE.

---

[4] The Sixth Circuit has held that associational discrimination claims are viable under the ADA and the Rehabilitation Act. *Popovich v. Cuyahoga Cty. Court of Common Pleas, Domestic Relations Div.*, 150 F. App'x 424, 427–28 (6th Cir. 2005).

9

**B. Child Find, FAPE, and discrimination claims (Counts III, IV, and V)**

Defendant next moves for judgment on the pleadings on Counts III (violation of Child Find under Section 504), IV (violation of FAPE under Section 504), and V (discrimination under the ADA and Section 504). The Court evaluates the merits of Amiya's ADA and Section 504 claims together. *S.S. v. E. Kentucky Univ.*, 532 F.3d 445, 452-53 (6th Cir. 2008) ("Apart from [Section 504's] limitation to denials of benefits 'solely' by reason of disability and its reach of only federally funded—as opposed to 'public'—entities, the reach and requirements of both statutes are precisely the same.") (citations omitted). To state a claim under either the ADA or Section 504 against a school receiving federal financial assistance, a plaintiff must allege "that he or she is (1) disabled under the statute, (2) 'otherwise qualified' for participation in the program, and (3) being excluded from participation in, denied the benefits of, or subjected to discrimination under the program by reason of his or her disability." *Id.* at 453.

Defendant argues that Amiya has failed to plausibly allege the third element. To prove discrimination in the education context, Defendant asserts that "something more than a mere failure to provide the free appropriate education under the IDEA" must be shown. (Doc. 18, at 5) (quoting *Sellers v. Sch. Bd. of Manassas*, 141 F.3d 524, 528-29 (4th Cir. 1998)). Defendant argues that, under this standard, Amiya may not rely on the denial of FAPE to state a claim but must allege, and ultimately prove, "bad faith" or "gross misjudgment." (*Id.*) (quoting *Sellers*, 141 F.3d at 529). Defendant asserts that Amiya's ADA and Section 504 claims fail because they allege only education-related concerns–that the District failed to evaluate her, identify her as a student with a disability, or provide her with FAPE–none of which amounts to bad faith or gross misjudgment. It argues that the claims also fail because Plaintiffs' own allegations show that the

10

District did not take any unfavorable or discriminatory action toward Amiya because of her disability. Rather, they explicitly aver that the District's Student Assessment Team made its decision because of Amiya's poor attendance and its effect on her studies.

In response, Amiya disputes that she must show anything more than a violation of the IDEA to establish a Section 504 or ADA violation. She asserts that, at most, she would have to establish that the District acted with deliberate indifference. Amiya believes her allegations are sufficient because she alleges that Plaintiffs alerted the District to Amiya's need for accommodations but the District failed to act.

The Sixth Circuit has consistently held that a violation of FAPE and IDEA is not enough to establish an ADA or Section 504 claim. Rather, such claims "*further require*[] that the [plaintiff] must ultimately prove that the defendant's failure to provide [the plaintiff] with a free appropriate public education was *discriminatory*. Surmounting that evidentiary hurdle requires that either bad faith or gross misjudgment must be shown before a § 504 violation can be made out, at least in the context of education of handicapped children." *G.C. v. Owensboro Public Schs.*, 711 F.3d 623, 635 (6th Cir. 2013) (emphasis in original) (quoting *Campbell v. Bd. of Educ. of Centerline Sch. Dist.*, 58 Fed. Appx. 162, 167 (6th Cir. 1988)). Thus, an IDEA violation or even deliberate indifference does not suffice for an ADA or Section 504 violation. Rather, the complaint must contain facts that plausibly allege and allow the Court to draw the reasonable inference that Defendant acted in bad faith or with gross misjudgment. *Twombly*, 550 U.S. at 555, 570; *Iqbal*, 556 U.S. at 678.

At this early stage of the litigation, the Court finds that Amiya has alleged enough to meet this burden. Defendant argues that "the gravamen of [Plaintiffs'] Amended Complaint is

simply that Amiya didn't get the evaluation and FAPE that the Burtons wanted." (Doc. 18, at 7). But a close reading of the complaint reveals that Amiya is not merely alleging that Defendant did not give her an evaluation. Rather, she alleges that Defendant deliberately ignored information regarding her depression and refused Plaintiffs' requests to have her evaluated based on the predetermined decision that she did not have a disability. Plaintiffs allege that they put Defendant on notice of their concerns about Amiya's emotional well-being as early as December 17, 2014. Defendant did not hold a meeting regarding Amiya until February 18, 2015, and the teachers at this meeting had not been informed of Mrs. Burton's request to have Amiya evaluated for a disability. Despite Plaintiffs alerting Defendant to their concerns about Amiya's depression, the Student Assessment Team did not discuss an evaluation at the February 18 meeting. Not until April 21, 2015–more than four months after Plaintiffs first notified Defendant of their concerns–did Defendant begin a 504 evaluation referral form. But it ultimately graduated Amiya without having completed the 504 evaluation or providing her with a 504 plan. The allegations in the First Amended Complaint are sufficient to allow the inference that, through bad faith or gross misjudgment, Defendant ignored information regarding Amiya's depression and Plaintiffs' requests to have Amiya evaluated for a disability until shortly before her graduation, leaving them no time to complete the evaluation and an excuse for not having provided her with any accommodations or services.

Defendant argues that the IHO's decision proves that the District did not exclude Amiya or deny her any benefits based on her disability because he determined that Amiya had passed her courses and met all other high school graduation requirements so that her graduation was not a sham. But, at this stage of the proceedings, the Court cannot accept as fact the IHO's factual

conclusions. Rather, in an educational discrimination case, a district court reviews the decisions of the due process hearing officer under a "modified *de novo*" standard, "whereby a plenary independent judicial re-examination of the evidence is tempered by an accord of 'due weight' to the administrative findings." *Campbell*, 58 Fed. Appx. at 165, n.3. The Court cannot conduct such a plenary re-examination of the evidence in ruling on a motion for judgment on the pleadings.

Defendant also cites to the Fourth Circuit's decision in *Sellers* as support for its argument that the failure to timely assess and diagnose a student's disability does not amount to bad faith or gross misjudgment. But in *Sellers*, the court affirmed dismissal of the plaintiffs' Section 504 claim because the plaintiffs had alleged only that their son's low test scores from as early as fourth grade "should have alerted" the school to his disability.[5] 141 F.3d at 529. The court held that the allegation–which at best presented a negligence claim–was "virtually indistinguishable from a complaint that a student has been incorrectly evaluated." *Id.* In rejecting these allegations as insufficient to show bad faith or gross misjudgment, the court explained:

> The reference in the Rehabilitation Act to "discrimination" must require, we think, something more than an incorrect evaluation, or a substantively faulty individualized education plan, in order for liability to exist. Experts often disagree on what the special needs of a handicapped child are, and the educational placement of such children is often necessarily an arguable matter. That a court may, after hearing evidence and argument, come to the conclusion that an incorrect evaluation has been made, and that a different placement must be required under [IDEA], is not necessarily the same thing as a holding that a handicapped child has been discriminated against solely by reason of his or her handicap.

*Id.* (quoting *Monahan v. Nebraska*, 687 F.2d 1164, 1170 (8th Cir. 1982)). *See also Campbell*, 58

---

[5] At the time the Sellers filed their complaint, their son was 18 and had recently been diagnosed as learning disabled and emotionally disturbed.

13

Fed. Appx. at 167 (affirming grant of summary judgment to school district because plaintiffs failed to produce any evidence that the accommodation offered by the school was not reasonable or that the district's decision-makers had failed to exercise a reasonable degree of professional judgment in determining the appropriate accommodation); *G.C. v. Owensboro Public Schs.*, 711 F.3d at 635 (affirming grant of summary judgment to school where plaintiffs cited no evidence to support their assertion of bad faith).

At summary judgment, the District may well prove that Amiya's Section 504 and ADA claims are purely education-related and simply a restatement of her IDEA claims. As discussed above, however, Amiya has alleged more than an incorrect evaluation, a faulty individualized education plan, or that the District acted with only negligence. At this stage of the litigation, where the Court is confined to the pleadings, Amiya has alleged enough to allow the reasonable inference that Defendant acted with gross misjudgment or in bad faith in ignoring Plaintiffs' pleas for an evaluation until she graduated and it could argue that there was nothing more that it could do for her. Thus, Defendant's motion is denied with respect to Amiya's claims in Counts III, IV, and V.

### C. Retaliation (Count VI)

Finally, Defendant moves for judgment on the pleadings on Count VI, which alleges that Defendant retaliated against Plaintiffs for exercising their IDEA, ADA, and Section 504 rights. As noted above, Defendant's motion is directed only at the ADA and Section 504 portion of this claim.

To state a retaliation claim under the ADA or Section 504, Plaintiffs must allege a prima facie case of retaliation. To do so, they must allege that: (1) they engaged in activity protected

under the ADA and Section 504; (2) Defendant knew of the protected activity; (3) Defendant took adverse action against Plaintiffs; and (4) a causal connection exists between the protected activity and the adverse action. *A.C. ex rel J.C. v. Shelby Cty. Bd. of Educ.*, 711 F.3d 687, 697 (6th Cir. 2013). "The burden of establishing a *prima facie* case in a retaliation action is not onerous, but one easily met." *Id.* (quoting *Nguyen v. City of Cleveland,* 229 F.3d 559, 563 (6th Cir. 2000).

Plaintiffs allege that Defendant retaliated by denying Amiya an evaluation for a disability, graduating her improperly, threatening to seek rescission of the diploma, and threatening to "seek[] fees pursuant to 20 U.S.C. 1415(i)(3)([B])(ii) and (iii) should Parent continue pursuing ... meritless" due process claims ("the fee letter"). (First Am. Compl. ¶ 196). Defendant's motion focuses on the allegations regarding Amiya's graduation and the fee letter.

With respect to the fee letter, Defendant argues that the ADA's protections against intimidation do not extend to Plaintiffs' attempts to exercise rights under the IDEA. Plaintiffs do not specify whether Count VI is brought under the ADA's anti-retaliation provision or its anti-intimidation provision. The anti-retaliation provision states that "[n]o person shall discriminate against any individual because such individual has opposed any act or practice *made unlawful by this chapter* or because such individual made a charge, testified, assisted, or participated in any manner *in an investigation, proceeding, or hearing under this chapter*." 42 U.S.C. § 12203(a) (emphasis added). The anti-intimidation provision makes it "unlawful to coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of, or on account of his or her having exercised or enjoyed, or on account of his or her having aided or encouraged any other individual in the exercise or enjoyment of, *any right granted or protected by this chapter*."

15

*Id.* at § 12203(b) (emphasis added).

Defendant cites *C.W. v. Capistrano Unified Sch. Dist.*, 784 F.3d 1237, 1247 (9th Cir. 2015), as support for its position that these provisions do not apply to Plaintiffs' claims arising under IDEA. There, the plaintiffs brought an intimidation claim under the ADA in federal court. They alleged that the school district had violated the ADA's anti-intimidation provision when it wrote a letter to the plaintiffs' counsel threatening to seek sanctions if the plaintiffs appealed an administrative law judge's determination that the district had not violated the IDEA. Citing the portion of the ADA's anti-intimidation provision highlighted above, the Ninth Circuit held that, by its own terms, the provision "does not extend to a plaintiff's attempts to exercise rights granted or protected by the IDEA." *Id.* at 1247.

In response to Defendant's argument, Plaintiffs cite several cases that recognize an IDEA-based retaliation claim, (*see* Doc. 22, at 31), but do not cite any cases holding that a plaintiff can state an ADA retaliation claim stemming from the exercise of IDEA-based rights. Because Plaintiffs pursued only IDEA and Section 504 claims before the IHO, the Court agrees with Defendant that they may not bring an ADA retaliation claim in this lawsuit. Thus, to the extent that Count VI claims that Defendant violated the ADA by sending the fee letter, it is dismissed.

Defendant's initial motion does not specifically address Plaintiffs' Section 504 retaliation claim. In their reply brief, they note that Section 504's anti-retaliation contains similar language to the ADA limiting the claim to the exercise of rights under the Rehabilitation Act. *See* 34 C.F.R. § 100.7(e); 34 C.F.R. § 104.61 (incorporating the remedies, procedures, and rights set forth in Title VI of the Civil Rights Act). Unlike their ADA retaliation claim, however, Plaintiffs

did exercise their rights under Section 504 before the IHO. (*See* IHO Decision, Doc. 18-1, at 15) (listing the issues, which included Plaintiffs' claim that the District unlawfully retaliated against them for exercising their rights under Section 504). For this reason, the Court denies Defendant's motion for judgment on the pleadings as to Plaintiffs' Section 504 retaliation claim to the extent it is based on the fee letter.

With respect to Amiya's graduation, Defendant argues that the claim must be dismissed because "the IHO's factual findings in its Decision and Order demonstrate" that Defendant did nothing to retaliate against them. (Doc. 18, at 9). It cites the IHO's findings that: the District completed a Section 504 evaluation; the District scheduled a meeting for May 27, 2015; by then, Amiya had passed the requisite classes and met all graduation requirements; and Amiya's graduation was not a sham. (*Id.* at 11). According to the District, Amiya "[r]eap[ed] the benefits of the District's programming, [and] ... graduated before the team met, obviating any need for Section 504 services or accommodations." (*Id.* at 9). As discussed earlier, however, the Court must review the IHO's findings under a "modified *de novo*" standard, which requires an independent re-examination of the evidence, something that the Court cannot do in ruling on a motion for judgment on the pleadings. Thus, at this point, the IHO's determinations that the District completed the 504 evaluation and that Amiya's graduation was not a sham cannot be the basis for finding that the District did not retaliate against Amiya. Because this is Defendant's sole argument with respect to the retaliation claim based on Amiya's graduation, their motion is denied as to this portion of the claim.

**CONCLUSION**

For the reasons discussed herein, Defendant's Motion for Judgment on the Pleadings

(Doc. 18) is GRANTED IN PART AND DENIED IN PART. LaRhonda Burton's claims in Counts III, IV, and V are dismissed for lack of standing. To the extent that Mrs. Burton's retaliation claim in Count VI is based on Amiya having graduated without FAPE, the claim is dismissed for lack of standing. To the extent Amiya's and Mrs. Burton's ADA retaliation claim is based on the fee letter, it is dismissed. All other claims remain pending.

      IT IS SO ORDERED.

/s/ Patricia A. Gaughan
PATRICIA A. GAUGHAN
United States District Court
Chief Judge

Dated: 9/29/17